IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DWAYNE STINSON,               )
                              )
        Plaintiff,            )        NO. 3:18-cv-0145
                              )
v.                            )        JUDGE RICHARDSON
                              )
NISSAN NORTH AMERICA, INC.,   )
                              )
        Defendant.            )

## MEMORANDUM OPINION

Pending before the Court are Defendant's Motion for Summary Judgment (Doc. No. 30)

and Plaintiff's Motion for Summary Judgment (Doc. No. 38). The parties have filed respective

responses and replies to these cross-motions.

## BACKGROUND[1]

Plaintiff was hired as a production technician at Defendant's Smyrna, Tennessee plant in

2003. Plaintiff reported a work injury to his shoulder in 2007 and had rotator cuff surgery to repair

it. Plaintiff was released by his physician to return to work in October 2007 with the following

recommendations: "I would recommend placing him on permanent restrictions limiting to

occasional overhead or outstretched arm use involving the right upper extremity. He is in

agreement with this plan. He is on a 16 lb lifting restriction with the right upper extremity overhead

occasionally." (Doc. No. 33-1).

---

[1] Where stated without qualification, the facts in this section are based upon the parties' respective
responses to the other party's Statement of Undisputed Facts (Doc. Nos. 45 and 48). That is, they
are facts asserted by one party and not disputed by the other. The Court notes that the pleadings,
depositions, and statements of facts include some assertions by a party that are inconsistent with
other assertions by the same party. This section also indicates where the parties are not, or not
necessarily, in agreement regarding particular facts.

Plaintiff's physician recommended "placing him on permanent restrictions limiting to occasional overhead or outstretched arm use involving the right upper extremity." (Doc. No. 33-1). The parties dispute whether Plaintiff's job involved frequent outstretched arm use and, thus, involved tasks outside his restrictions. Doc. No. 48 at ¶¶ 4 and 5). Defendant asserts that Plaintiff's job on the assembly line involved frequent outstretched use of his arms to attach parts to vehicles as they traveled down the line. Plaintiff denies this fact and states "The job on the assembly line requires **frequent use of his hands**, but **not frequent outstretched reaching**." (*Id*. at ¶ 4) (emphasis in original). Defendant also claims that despite his physician's recommended restrictions, Plaintiff continued to regularly perform activities that involved the outstretched use of his arms. Plaintiff denies this fact as well and stated "Mr. Stinson's job does not require regular "outstretched" reaching. (*Id*. at ¶ 5).

Plaintiff contends that he continued his usual and customary job as a production assistant from 2007 through December of 2016 with no change in his shoulder restrictions, no discomfort or pain in his shoulder, no complaints to Defendant about his shoulder, and no complaints from Defendant about the execution, production, or quality of Plaintiff's work. (Doc. No. 45 at ¶¶ 8-9). During that nine-year period after his shoulder injury, Plaintiff was never given a job he was physically unable to do, and he never asked for an accommodation. (*Id*. at ¶ 11). Plaintiff has denied having a disability that interferes with major life activities. (*Id*. at ¶ 13)[2]

In late 2016, Plaintiff sought a transfer from the night shift to the day shift. (Doc. No. 48 at ¶ 7). Defendant asserts that, in connection with that request, it (through a third party, Progressive

---

[2] Although Plaintiff has affirmatively stated that he is not disabled, his Complaint alleges that he was "at all times disabled," that he had a disability that interfered with major life activities and activities of daily living, and that Defendant knew of his disability. (Doc. No. 1 at ¶¶ 29, 31-32).

Health) evaluated positions relative to Plaintiff's physician's recommended work restrictions and determined that both the position to which Plaintiff wanted to transfer and Plaintiff's then-current position required outstretched use of his arms beyond what his physician recommended. (Doc. No. 48 at ¶¶ 8-9). Plaintiff disputes both the impetus for this evaluation and the credibility of the Progressive Health report. (*Id.*) Based on that report, Defendant determined that no other production positions were available within Plaintiff's restrictions. (*Id.* at ¶ 10). Plaintiff disputes this conclusion as well. (*Id.*).

Plaintiff testified that he was out from work on worker's compensation leave because of a different injury (a broken elbow) from December 2016 through July 2017. (Doc. No. 48 at ¶ 11). While on leave, Plaintiff returned to his physician,[3] who determined to leave the permanent work restrictions in place because they had been "accomplishing their goals." (Doc. No. 33-2 at 1). Based upon his discussion with Plaintiff, the physician stated that Plaintiff had worked without incident under the permanent restrictions, with no pain, injury, or discomfort, and had been able to be productive and work regularly. (*Id.*).

Plaintiff disagrees with his physician's recommendation to avoid the outstretched use of his arms. (Doc. No. 48 at ¶ 13). Plaintiff contends that he is not physically limited and does not need to restrict his activities. (*Id.* at ¶ 14). Plaintiff claims that he can perform his job duties without modification. (*Id.* at ¶ 15). The parties dispute whether Plaintiff remains on approved leave or has quit (or resigned) his employment (*Id.* at ¶¶ 17-18). In any event, Plaintiff has not worked at Nissan since December 2016. (Doc. No. 45 at ¶ 20).

---

[3] Consistent with his EEOC charge discussed below, Plaintiff asserts that Defendant ordered him to go to his doctor and have the restrictions removed, or else he would be terminated. (Doc. No. 45 at ¶ 14).

On November 1, 2017, Plaintiff filed a Charge of Discrimination with the Equal

Employment Opportunity Commission ("EEOC"), alleging that Defendant discriminated and

retaliated against him based upon disability. That Charge states:

> On December 19, 2016, Plant Manager, Mark LaCroix, told me to get my
> restrictions from a workplace injury lifted, or I would be terminated. On July 9,
> 2017, when I tried to return to work after another injury, I was told "they had not
> done a work evaluation, and that they did not have anything I could do so I was told
> to go home." I did not[4] request reasonable accommodation. Due to my work
> restrictions, I was not able[5] to perform my job duties that I had been doing since
> 2007. On June 23, 2017, I was discharged.

Doc. No. 47-1. Plaintiff's EEOC Charge filed with the Court also includes an Amendment, but

there is no indication when the Amendment was added. The Amendment states:

> William Stinson sustained an admitted injury to his shoulder on or about 2007.
> Following the injury, he was returned to work with restrictions. He proceeded to
> work from 2007 through December 20, 2016, when a door fell on his elbow. During
> that time, he had no further problems with his shoulder, and was able to complete
> his usual and customary job. However, when returned to work from his elbow
> injury (with no additional restrictions), Mr. Stinson was not allowed to return to
> work because of the ten year old work restriction.
>
> Nissan has discriminated against an injured worker for a work restriction that
> interferes with activities of daily living. They have failed to follow the interactive
> process in good faith and to accommodate the work restriction, when claiming his
> sole remedy is to have the disability lifted. The shoulder restrictions do not interfere
> with any essential functions of his job on the door line, as he has been able and/or
> allowed to do said job without incident for ten years.

---

[4] On the copy of the EEOC Charge filed with the Court this word "not" is marked out. (Doc. No.
47-1).

[5] On the copy of the EEOC Charge filed with the Court this word "able" is marked out and the
word "allowed" is written below it. (Doc. No. 47-1). This change seems appropriate, given
Plaintiff's apparent views regarding the work he was able to perform despite his physician's
recommendation.

Doc. No. 47-1 at 2.[6] The EEOC issued a Right to Sue letter to Plaintiff on January 24, 2018 (Doc. No. 1-1).

Plaintiff filed this action on February 13, 2018, alleging (Count 1) failure to accommodate[7] under the Americans with Disabilities Act ("ADA"); (Count 2) failure to engage in the interactive process; and (Count 3) other discrimination under the ADA. (Doc. No. 1). Plaintiff also asserted (Count 4) a claim for retaliation for filing a worker's compensation claim.

Plaintiff moved for summary judgment on all of his claims. In turn, Defendant moved for summary judgment on all of Plaintiff's claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

---

[6] Plaintiff represented that he was also filing a "Letter to the EEOC requesting investigation September 8, 2017," but that document is not filed with Plaintiff's Appendix (Doc. No. 47).

[7] The Complaint confusingly states that Defendant "allowed him to work without accommodations on the door line for ten years" and then states that Defendant "abruptly withdrew the accommodation." (Doc. No. 1 at 1).

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018). The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 628.

A party asserting that a fact cannot be or genuinely is disputed—i.e., a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). The court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. *New Century Found. v.*

*Robertson*, _ F. Supp. 3d _, 2019 WL 4276989, at * 2 (M.D. Tenn. Sept. 10, 2019). Summary judgment in favor of either party is not proper if disputes remain as to material facts. *Id*. When there are cross-motions for summary judgment, the court must evaluate each party's motion on its merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration. *Id.*; *Richardson v. Astec, Inc.*, 366 F. Supp. 3d 983, 991 (E.D. Tenn. 2019).

## <u>AMERICANS WITH DISABILITIES ACT</u>

The ADA forbids discrimination against a "qualified individual on the basis of disability" in regard to job application procedures; the hiring, advancement or discharge of employees; employee compensation; job training; and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

The ADA specifically defines one aspect of discrimination to include failure to accommodate the known physical or mental limitations of an otherwise-qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A)). As part of its responsibilities under the ADA, an employer must engage in an "informal, interactive process" with the employee to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 840 (6th Cir. 2018). For employees seeking accommodations, "the interactive process is mandatory, and both parties have a duty to participate in good faith." *Id*.

Plaintiff alleges violations of the ADA in three ways: failure to accommodate his alleged disability; failure to engage in the interactive process; and discrimination based upon his disability (other than failure to accommodate).

In order to recover for violation of the ADA under any of Plaintiff's theories, he must first show that he has a "disability," as that term is defined by the statute. "Disability" means (A) a physical or mental impairment that substantially limits one or more major life activities;[8] (B) record of such impairment;[9] or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1). The definition of disability "shall be construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A).

"Major life activities" under the ADA include working. 42 U.S.C. § 12102(2). Working is an example of a major life activity, but simply being unable to perform a discrete task or specific job does not automatically render one as having a disability. *Booth v. Nissan North Am., Inc.*, 927 F.3d 387, 394 (6th Cir. 2019), *petition for cert. docketed,* (U.S. Aug. 26, 2019) (No. 19-252). Even though Congress has instructed the courts to construe the definition of disability in favor of broad coverage, it did not modify the definition of "major life activity," and a plaintiff who alleges a work-related disability is still required to show that his impairment limits his ability to "perform a class of jobs or broad range of jobs." *Id*.

Defendant argues that Plaintiff cannot show that he is a person with a disability for purposes of the ADA. Plaintiff has sent decidedly mixed signals concerning whether he claims to have an actual disability. Essentially, Plaintiff alleges that his work restrictions did not in any way limit his ability to do his job for ten years, but that Defendant suddenly became aware of (or took

---

[8] Herein, the impairment described in category (A) will at times be referred to, for ease of reference, as an "actual disability." The Court intends any reference to "actual disability" to refer specifically to an impairment falling within this particular statutory sub-definition of "disability."

[9] There is no assertion of Plaintiff's having a "record" of impairment in this case.

notice of) those restrictions and then, citing the restrictions, would not allow Plaintiff to do his job.[10] In his Motion for Summary Judgment, however, Plaintiff asserts only that he was "regarded as" having a disability, not that he had an actual disability. (Doc. No. 32 at 7). Therefore, the Court finds that Plaintiff has not sufficiently carried his burden to show that he has an actual disability, and Defendant is entitled to summary judgment on any claim to the extent based on the theory that Plaintiff has an actual disability.

Plaintiff asserts that Defendant "regarded him" as having a disability. (Doc. Nos. 30, 32). An individual will qualify as "regarded as" having a disability if the individual "establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment, *whether or not the perceived impairment limits or is perceived to limit a major life activity.*" 42 U.S.C. § 12102(3)(A) (emphasis added). The statute, as amended in 2008 under the so-called ADAAA, clarifies that an individual making a "regarded as" claim need not show that an employer perceived an impairment that is substantially limiting as to a major life activity. *Equal Emp. Opportunity Comm'n v. M.G.H. Family Health Center*, 230 F. Supp. 3d 796, 806 (W.D. Mich. 2017);  Thus, the 2008 amendments codified in the ADAAA made the ADA's definition of being 'regarded as' having an impairment substantially broader than that definition had been..[11]  Under 42 U.S.C. § 12102(3)(A), implemented by the 2008

---

[10] The Court is a bit perplexed as to how Defendant could have been unaware, for ten years, that Plaintiff's doctor had recommended work restrictions. But this is what Plaintiff alleges, apparently without refutation from Defendant. Indeed, Defendant argues in support of its Motion for Summary Judgment that "Plaintiff also cannot establish a causal link with any alleged adverse action considering that Nissan continued to employ him without incident for nearly ten years after he first reported a work injury in 2007." (Doc. No. 39 at 19).

[11] Prior to the amendments, the Supreme Court had interpreted the "regarded as" portion of the disability definition as requiring a plaintiff to plead and prove that she was regarded as having an impairment that substantially limited one or more major life activities. *Adair v. City of Muskogee*,

amendments, a plaintiff can qualify as having a "disability" by virtue of being regarded as having an impairment less severe than an actual disability; i.e., regarded as having an impairment even if the perceived impairment is not regarded as limiting one or more major life activities.[12]

Therefore, a plaintiff alleging that his employer regarded him as disabled under the ADA needs to plead and prove only that he was regarded as having a physical or mental impairment. *Donaldson v. Trae-Fuels, LLC*, Civil Action No. 3:18CV00097, 2019 WL 2193858, at * 4 (W.D. Va. May 21, 2019). Such a plaintiff need not plead or prove that the perceived impairment substantially limited one or more major life activities. *Id.*[13] Here, however, there is a threshold issue of whether Plaintiff has actually *pled* a "regarded as" theory.

Defendant argues that Plaintiff is barred from pursuing a "regarded as" theory because that theory was neither timely pled nor administratively exhausted. (Doc. No. 39 at 9). Almost nine months after filing the Complaint, Plaintiff filed a Motion for Leave to File Amended Complaint (Doc. No. 21) to add a Count Five that would have alleged "constructive discharge when regarding

---

823 F.3d 1297, 1304 (10th Cir. 2016) (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)). This makes perfect sense, given the statutory definition of [actual] disability.

[12] The statute goes on to say that the "regarded as" theory shall not apply to impairments that are transitory and minor. 42 U.S.C. § 12102(3)(B); *Babb v. Maryville Anesthesiologists, P.C.*, No. 19-5148, slip op. at 13 (6th Cir. Nov. 6, 2019) This "transitory and minor" exception is an affirmative defense that the employer bears the burden of proving. *Id.* (citing 29 C.F.R. § 1630.15(f)). This exception has not been asserted here.

[13] Given this reality, one may wonder why, in the aftermath of the 2008 amendments, a plaintiff would ever proceed under the theory that he or she had an actual disability rather than the theory that he or she was "regarded as" having a disability, which post-2008 is seemingly easier to establish. One answer is that, as indicated below, fewer actions support a claim of discrimination under a "regarded as" theory than under an "actual disability" theory; failure to accommodate will support the latter but not the former theory.

him as disabled."[14] (Doc. No. 21-4). The Magistrate Judge denied Plaintiff's motion to amend his Complaint as untimely, finding that Plaintiff did not show good cause for failing to request that the deadline be extended, either before or after that deadline passed. (Doc. No. 26). Plaintiff sought review of the Magistrate Judge's Order by the undersigned, who agreed with the Magistrate Judge and additionally noted that Plaintiff also had not shown good cause for waiting almost two-and-a-half months after discovery of the alleged "new evidence" to file his Motion to Amend. The undersigned thus affirmed the Order of the Magistrate Judge, and Plaintiff was not allowed to add (as Count Five) a "regarding as" claim for constructive discharge. (Doc. No. 29).

However, there are allegations in the original Complaint that Defendant regarded Plaintiff as having an impairment and failed to allow him to return to work because of that perceived impairment. For example, in ¶ 25, Plaintiff asserts that Nissan regards him as disabled. In ¶ 35, Plaintiff contends that he suffered harassment and an adverse employment action when Nissan regarded him as disabled in conflict with its own insurance company. Plaintiff alleges, in ¶ 37, that Defendant's alleged accommodation for a "perceived disability" was to tell Plaintiff to get rid of that disability. And in ¶ 58, Plaintiff states that regarding him as disabled "is so preposterous that Nissan's own insurance company denied disability payments." In broad terms, Plaintiff's entire complaint is based upon Defendant's newly announced decision that Plaintiff could not perform his job, after he had performed it (despite the recommended work restrictions) for ten years. The Court finds that Plaintiff's Complaint sufficiently pled that Defendant "regarded [him] as having

---

[14] At times herein, the Court refers to the Plaintiff (or "a plaintiff") being "disabled," rather than as "having a disability." When it does so, the Court does so either because it is quoting or citing to a source that used that term, or to enhance the conciseness and readability of its individual sentences. The Court by no means intends to imply that persons with disabilities should be labeled with the overarching adjective, "disabled," which could be taken to imply obtusely that a person with a disability somehow can not or does not transcend his or her disability.

[a physical] impairment" to enable him to pursue a "regarded as" theory consistent with the 2008 amendments to the ADA. Plaintiff is not barred from asserting that he was "regarded as" having a disability on the grounds that he did not adequately plead that claim.

The next question is whether Plaintiff administratively exhausted his "regarded as" theory with the EEOC. Although not using the words "regarded as," Plaintiff's EEOC charge suggests that Defendant perceived him as having a disability, inasmuch as the charge alleges that after ten years, Defendant would not allow him to work because of his ten-year-old work restrictions. (Doc. No. 47-1). Within the Sixth Circuit, the general rule is that the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination. *Hawkins v. Center for Spinal Surgery*, 34 F. Supp. 3d 822, 834 (M.D. Tenn. 2014). Either the claim must grow out of the investigation, or the facts alleged in the charge must be sufficiently related to the claim such that those facts would prompt an investigation of the claim. *Fondren v. American Home Shield Corp.*, No. 17-2519, 2018 WL 3061344, at * 3 (W.D. Tenn. Mar. 15, 2018) (citing *Jones v. Sumser Retirement Village*, 209 F.3d 851, 853 (6th Cir. 2000)).

Defendant points out that in his EEOC intake questionnaire, Plaintiff checked the box for "Yes, I have a disability" and not for "No disability but the organization treats me as if I am disabled." *See* Doc. No. 47-1. The Sixth Circuit has stated, however, that "the facts alleged in the body of the EEOC charge, rather than merely the boxes that are marked on the charge, are the major determinants of the scope of the charge." *Hawkins*, 34 F. Supp. 2d at 834, citing *Bray v. Palm Beach Co.*, 1990 WL 92672, at * 2 (6th Cir. June 29, 1990); *see also Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004). The Court finds that Plaintiff's "regarded as" theory reasonably arose from the facts alleged in the EEOC charge concerning his ADA claim. Therefore, Plaintiff sufficiently exhausted his administrative remedies concerning the "regarded as" theory.

Defendant also argues that Plaintiff's "regarded as" theory is barred as untimely. Plaintiff's EEOC charge was filed on November 6, 2017. To maintain an employment discrimination claim under the ADA, a claimant must first file a *timely* charge of discrimination with the EEOC. *Gong v. Cleveland Clinic Found.*, No. 18-3175, 2018 WL 5734584, at * 2 (6th Cir. Oct. 12, 2018). The applicable deadline here was 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e). Under federal law, the limitations period begins when the plaintiff knows or has reason to know of the injury that is the basis of his action. *J. Enfres v. Northeast Ohio Med. Univ.*, 938 F.3d 281, 292 (6th Cir. 2019).

Although Plaintiff has alleged that, in the fall of 2016, Defendant's representatives told him he would be terminated if he did not have the 2007 shoulder restrictions removed (Doc. No. 32 at 2), Plaintiff's EEOC charge states that the disability discrimination occurred between December 19, 2016, and June 23, 2017. The EEOC charge asserts that Plaintiff was "discharged" on June 23, 2017 and that he tried to return to work on July 9, 2017 (after his unrelated medical leave) but was not allowed to return. The Court finds that the alleged unlawful employment practice occurred at the earliest on June 23, 2017 (when Plaintiff was "discharged") or on July 9, 2017 (when he unsuccessfully sought permission to return to work after an unrelated medical issue). Based on his allegations, Plaintiff knew or had reason to know he would not be allowed to return to work at the earliest on June 23, 2017. Thus, his EEOC charge was filed within 300 days as required. Plaintiff, not Defendant, is entitled to summary judgment as to Defendant's affirmative defenses that Plaintiff's "regarded as" theory was not administratively exhausted and was not pled within the applicable limitations period.

The Court additionally finds that Plaintiff has raised a genuine issue of material fact as to whether Defendant regarded him as having an impairment. When a defendant flatly bars a plaintiff

from working at any job at the defendant's company, that is generally sufficient proof that the employer regards the plaintiff as disabled so as to preclude the defendant being awarded summary judgment as a matter of law. *Watts v. United Parcel Serv.*, 378 F. App'x 520, 526 (6th Cir. 2010). In this case, the evidence that Defendant would not allow Plaintiff to return to work because of his work restrictions tends to prove that Defendant regarded him as having a disability, and Defendant has not disputed that fact. The fact that Defendant also determined that no other production positions were available within Plaintiff's recommended restrictions (Doc. No. 48 at ¶ 10) also tends to show that Defendant regarded Plaintiff as unable to perform a broad range of jobs; that is, the same general type of work. Thus, Plaintiff has produced competent evidence to show that Defendant regarded him as disabled.

Defendant has raised a defense to that theory, however. Defendant argues that it was merely following the recommendations of Plaintiff's treating physician and contends that that circumstance overcomes Plaintiff's motion for summary judgment on the "regarded as" theory. The "regarded as" theory protects employees who are perfectly able to perform a job but are rejected because of the myths, fears, and stereotypes associated with disabilities. *Gruener v. Ohio Cas. Ins. Co.*, 510 F.3d 661, 664 (6th Cir. 2008). It applies when an employer mistakenly believes an employee is disabled. *Id.*

In *Equal Emp. Opportunity Comm'n v. Burlington Northern & Santa Fe Ry. Co.*, the court held that where an employer follows the recommendation of a treating physician, the employer's belief that the plaintiff is substantially limited is not considered mistaken. *Burlington*, 621 F. Supp. 2d 587, 595 (W.D. Tenn. 2009). Following those recommendations *might* shield an employer from liability on a "regarded-as" theory claim because the employer is not viewing the employee through stereotypes based on his impairment. *Id.* In *Mahon v. Crowell*, 295 F.2d 585, 592 (6th Cir.

2002), the court found that the employer did not regard the employee as disabled under the statute because it did not hold any *mistaken* belief about him. Indeed, the court found that the defendant was not wrongly viewing the employee through a stereotype of disability, but rather following the specific recommendations of a treating physician. *Id.*, cited in *Gruener*, 510 F.3d at 665.

As noted above, there are questions of fact as to what Plaintiff's doctor's recommendations actually were. There are issues of fact as to whether Defendant was correctly interpreting and following those restrictions (which would mean that Plaintiff was not "regarded as" having a disability by Defendant) or instead was *mistaken* that Plaintiff had an impairment (which would mean that Plaintiff was "regarded as" having a disability by Defendant).[15] Defendant has shown there to be genuine issues of material fact precluding summary judgment for the Plaintiff on any claim to the extent based on a "regarded as" theory.[16] Thus, being subject to summary judgment with respect to his "actual disability" theory claims, and being unable to show a lack of a genuine issue of material fact as to his regarded-as theory claims, Plaintiff's motion for summary judgment will be denied as to each of his ADA claims.

But that is not to say that Defendant is entitled to summary judgment on Plaintiff's "regarded as"-theory; on the contrary, these genuine issues mean that Defendant is not entitled to summary judgment based on Plaintiff's failure to show that he was regarded as having a disability. To be so entitled, Defendant must establish Plaintiff's inability to raise a genuine issue of fact as to some other required element of Plaintiff's regarded-as theory claims.

---

[15] Plaintiff contends that Defendant reads the restrictions too strictly, as prohibiting all reaching, while the physician's report describes the restrictions as prohibiting more than occasional outstretched arm motions. (Doc. No. 48 at ¶ 9).

[16] Herein, to the extent a claim set forth in any count is based on a "regarded as" theory, rather than the failed "actual disability" theory, it will be referred to for ease of reference as a "regarded as-theory" claim.

One such other required element is that, assuming that Defendant regarded Plaintiff as having a disability, Defendant *discriminated* against him because of that perceived disability. *Wiseman v. Convention Center Auth. of the Metro. Gov't of Nashville and Davidson Cty.*, 3:14 C 01911, 2016 WL 54922, at * 12 (M.D. Tenn. Jan. 5, 2016) (establishing that an individual's being regarded as having such an impairment does not, by itself, establish liability). As set forth below, Plaintiff attempts to make this showing by establishing that Defendant failed to accommodate his perceived disability (Count 1), failed to engage in the interactive process (Count 2), and otherwise discriminated against him because of his perceived disability (Count 3).

 Count One: Failure to Accommodate

The ADA specifically defines one aspect of discrimination under that Act to include not making reasonable accommodations to the known physical or mental limitations of an otherwise-qualified individual with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of that employer. *O'Donnell v. Univ. Hospitals Health Syst,*, Case No. 1:16-cv-2480, 2018 WL 1627436, at * 7 (N.D. Ohio Apr. 4, 2018) (citing 42 U.S.C. § 12112(b)(5)(A)).

Where an individual meets the definition of "disability" only under the third ("regarded as") prong, however, an employer need not provide a reasonable accommodation. 42 U.S.C. § 12201(h); 29 C.F.R. § 1630.9(e); *Wiseman*, 2016 WL 54922, at * 12 (citing 29 C.F.R. §1630.2(o)(4)) (explaining that accommodations are required for individuals having an actual disability or a record thereof, but not for individuals "regarded as" disabled); *West v. United Parcel Serv., Inc.*, No. 3:10-CV-716-H, 2011 WL 1539792, at *2 (W.D. Ky. Apr. 22, 2011) ("[T]he Sixth Circuit has held that employers do not owe a duty to accommodate an employee who is only regarded as having a disability.") (citing *Workman v. Frito–Lay, Inc.,* 165 F.3d 460, 467 (6th

Cir.1999)). To the extent a plaintiff proceeds solely under the "regarded as" prong of the ADA, an employer has no duty to accommodate an employee it regards as disabled.[17] *Wells v. Cincinnati Children's Hosp. Med. Center*, 860 F. Supp. 2d 469, 483 (S.D. Ohio 2012). "This in fact was the law in this Circuit prior to the [2008] enactment of the ADAAA." *Id.*; *Anaissie v. Univ. of Cincinnati Physicians, Inc.*, Case No. 1:15cv701, 2018 WL 1456102, at * 8 (S.D. Ohio Mar. 23, 2018) (noting that if an employee is only "regarded as" having a disability, that would obviate the employer's obligation to reasonably accommodate the employee).

Therefore, under Plaintiff's sole cognizable ADA theory (the "regarded as" theory), Defendant had no duty to accommodate Plaintiff's perceived disability, and Defendant is entitled to summary judgment on Plaintiff's failure-to-accommodate claim in Count One. Because of this finding, the Court will not address Defendant's arguments that Plaintiff's failure-to-accommodate claim is time-barred and that Plaintiff did not request an accommodation.

Count Two: Failure to Engage in the Interactive Process

Under the ADA, an employer must engage in an "informal, interactive process" with the employee to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 840 (6th Cir. 2018). Because Defendant had no duty to provide a reasonable accommodation in this case, there also was no duty to engage in this interactive process, and Defendant is entitled to summary judgment on Count Two. *Cf. Schott v. Trinity Health-Michigan*, No. 11-12468, 2013 WL 1090514, at *7 (E.D. Mich. Mar. 15, 2013) ("'[e]mployers who fail to

---

[17] This may raise the question of what good it does a plaintiff to qualify as having a disability only under the "regarded as" prong. The answer is that persons so qualifying are eligible for remedies for various forms of discrimination other than failure to accommodate.

engage in the interactive process in good faith face liability [under the ADA only] if a reasonable accommodation would have been possible.'") (quoting *Lafata v. Church of Christ Home For the Aged,* 325 F. App'x 416 (6th Cir.2009)). Indeed, a claim of failure to engage in the interactive process may be a form of a failure-to-accommodate claim. *Cf. Doe v. Directions for Youth & Families, Inc.,* No. 15-CV-2861, 2016 WL 6093370, at *8 (S.D. Ohio Oct. 19, 2016) (specifically coining the term, "accommodation claim," to refer to the plaintiff's claim that the defendant failed to engage with the plaintiff in an interactive process seeking a reasonable accommodation for her disability); *Johnson v. Evangelical Lutheran Good Samaritan Soc'y,* No. CV-04-209-ST, 2005 WL 2030834, at *9 n. 6 (D. Or. Aug. 23, 2005) ("It is unclear whether a failure to engage in the interactive process will support a claim wholly independent from a failure to accommodate claim."). Thus, this claim cannot be established via a "regarded as" theory.

Count Three: Other Forms of Discrimination

Count Three of Plaintiff's Complaint alleges discrimination (beyond failure to accommodate or failure to engage in the interactive process)[18] in violation of the ADA. Generally, to recover on a claim for discrimination under the ADA, a plaintiff must show that he (1) is disabled, (2) is otherwise qualified to perform the essential functions of the position, with or without accommodation, and (3) suffered an adverse employment action because of his disability. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016). The alleged discrimination must have been a "but-for" cause of the adverse employment action. *Hunt v. Monro Muffler Brake, Inc.*,

---

[18] Except as to persons who qualify as having a disability based solely on a "regarded as" theory, failure to accommodate (which Plaintiff alleged in Count One) constitutes discrimination in violation of the ADA. 42 U.S.C. § 12112(b); *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007). The same is true as to failure to engage in the interactive process (alleged in Count Two). But there are other forms of such discrimination, *id.*, and Count Three appears directed at those forms.

769 F. App'x 253, 256 (6th Cir. 2019). A plaintiff may meet these requirements by introducing direct evidence of discrimination or by introducing indirect evidence of discrimination. *Ferrari,* 826 F.3d at 891.

Because Plaintiff asserts, and Defendant does not dispute, that Defendant told him to have his work restrictions lifted or lose his job (Doc. No. 45 at ¶ 14), and because Defendant refused to let Plaintiff return to work specifically because of his work restrictions (Doc. No. 48 at ¶¶ 9-10), the Court finds that Plaintiff has presented direct evidence of ADA discrimination.[19] If there is direct evidence that the plaintiff suffered an adverse employment action[20] because of his perceived disability, then the plaintiff must show that (1) he is an individual with a "disability" (under any of the three statutory alternatives, including but not limited to an actual disability) within the meaning of the statute; and (2) he is otherwise qualified for the job despite the disability either (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. *Ferrari*, 826 F.3d at 256. If the plaintiff proves these elements, then the employer must show that a challenged job criterion is essential or that a proposed accommodation will impose an undue hardship. *Id.*

A. Adverse Employment Action

The Court turns initially to whether Plaintiff has shown an adverse employment action. Plaintiff maintains that the prohibition of his return to work was an adverse employment action,

---

[19] If the evidence supporting the plaintiff's discrimination claim is indirect, the burden mirrors the *McDonell Douglas* burden-shifting framework for Title VII discrimination cases. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[20] Defendant disputes whether Plaintiff suffered an adverse employment action.

constructive discharge. There is no dispute that Defendant would not allow Plaintiff to return to work because of his work restrictions.

Defendant first argues that Plaintiff did not suffer this adverse employment action— being told he could not return to work with his existing work restrictions—within the applicable limitations period. As noted earlier, to maintain an employment discrimination claim under the ADA, a claimant must first file a timely charge of discrimination with the EEOC. *Gong*, 2018 WL 5734584, at * 2. The applicable deadline here was 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e). Under federal law, the limitations period begins when the plaintiff knows or has reason to know of the injury which is the basis of his action. *J. Enfres*, 938 F.3d at 281. Plaintiff filed his EEOC charge on November 6, 2017. As the Court has already found, Plaintiff had reason to know that he would not be able to return to work at the earliest on June 23, 2017, the date he claims he was "discharged" or July 9, 2017, the date he was not allowed to return to work.[21]

Defendant nevertheless asserts that any alleged adverse employment action of this ilk occurred on December 20, 2016, when Plaintiff began a leave of absence. (Doc. No. 39 at 16). Although Defendant implies that Plaintiff was out on leave beginning December 20, 2016 because of his shoulder work restrictions, Plaintiff testified that he was out on worker's compensation leave from December 2016 until July 2017 for a broken elbow, and Defendant has not rebutted that assertion. (Doc. No. 48 at ¶ 11; Doc. No. 38-1 at 79-80). Thus, Plaintiff is entitled to summary judgment as to the affirmative defense that Plaintiff is time-barred from pursuing a claim based on this adverse action.

---

[21] The Complaint also alleges that Plaintiff attempted to return to work on or about July 26, 2017, following his elbow injury. (Doc. No. 1 at ¶¶ 14-15).

Defendant also essentially disputes that the alleged adverse employment action occurred at all. That is, Defendant argues that Plaintiff cannot show that he was constructively discharged, because he cannot show that his working conditions were intolerable and because he has not resigned. (Doc. No. 39). Constructive discharge depends upon the facts of each case and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee. *Arndt v. Ford Motor Co.*, 716 F. App'x 519, 529 (6th Cir. 2017). A plaintiff may show constructive discharge by showing that his working conditions were so difficult or unpleasant that a reasonable person in his shoes would have felt compelled to resign. *Id.* [22]

Alternatively, a plaintiff may demonstrate constructive discharge by showing that the employer acted in a manner so as to have communicated to a reasonable employee that he would be terminated, and the employee chooses to resign instead of waiting to be fired. *Dieckmann v. Care Connection of Cincinnati, LLC,* Case No. 1:17-cv-73, 2018 WL 6675491, at * 6 (S.D. Ohio Dec. 19, 2018); *McMahon v. Metro. Gov't of Nashville and Davidson Cty., Tenn.*, No. 3:13-0319, 2016 WL 323524, at * 8 (M.D. Tenn. Jan. 27, 2016). In other words, constructive discharge also occurs where, based on the employer's actions, "the handwriting was on the wall and the axe was about to fall." *Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2014).

Here, Plaintiff has offered evidence that Defendant demanded that he have his work restrictions removed or he would lose his job and that when he tried to return to work from another injury, Defendant would not allow him to work. Whether the adverse employment action is called a constructive discharge or simply not allowing Plaintiff to return to work, Plaintiff has sufficiently demonstrated that the "handwriting was on the wall and the axe was about to fall" in this case—

---

[22] Plaintiff argues that a failure to accommodate can be seen as an intolerable working condition, but, as noted above, the employer had no duty to accommodate if the employee is "regarded as" disabled.

—*i.e.*, that Defendant gave him no choice other than to have the work restrictions removed or not work.

Defendant also asserts that Plaintiff is still on approved leave and has not resigned his employment, so there was no "discharge" at all. (Doc. No. 48 at ¶¶ 17-18). Plaintiff responds by pointing to his testimony that he has quit his job and retained employment elsewhere. (*Id.*) These disagreements may simply be disputes over semantics. Clearly Plaintiff no longer works for Defendant. No reason has been offered for the fact that he no longer works for Defendant other than his work restrictions. Plaintiff has demonstrated sufficiently that Defendant acted in a manner so as to have communicated to a reasonable employee that he would be terminated. And there is no dispute that any such termination would have been based upon his work restrictions. Plaintiff has demonstrated the existence of an adverse employment action, and Defendant has not shown otherwise. Therefore, the Court will use the direct evidence method of analyzing Plaintiff's discrimination claim.

B. Disability

Having direct evidence of an adverse employment action, the Court turns now to the requirement that Plaintiff show that he is what *Ferrari* called "disabled," i.e., a person with a "disability" within the meaning of the statute. As indicated above, Plaintiff has shown that there is a genuine issue of material fact as to whether Defendant regarded him as having a disability, satisfying this element and precluding summary judgment for Defendant on the specific grounds that Plaintiff cannot prevail on claim based on a "regarded as" theory.

On the other hand, as further discussed above, Defendant likewise has presented sufficient evidence that it did *not* regard Plaintiff as disabled (including evidence to support its claim that it was simply following the physician's orders) to create a genuine issue of material fact here. This

precludes summary judgment for Plaintiff on any of his claims, since all are based on a "regarded as" theory.

## C. Otherwise Qualified

As for the second requirement, showing that Plaintiff is otherwise qualified for the position despite the disability either (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation, Plaintiff contends that he was "otherwise qualified" for the job despite the perceived disability, as evidenced by the fact that he performed the essential functions of the job without accommodation for ten years. Defendant does not dispute that Plaintiff performed his job from 2007 until December 2016, despite having the same shoulder restrictions Defendant relied upon in refusing to allow him to return to his job in 2017.[23] (Doc. No. 45 at ¶ 8). Defendant also does not dispute that during that nine-year period, Plaintiff received no complaints from management on the execution and production of his work and no quality complaints from Defendant. (*Id.* at ¶ 9).[24] Defendant argues that it had no obligation to let Plaintiff continue to work outside his restrictions, but there are genuine issues of material fact as to whether the essential functions of Plaintiff's job *were* outside his work restrictions. Those issues of fact preclude summary judgment for Defendant on the basis that Plaintiff was not "otherwise qualified."[25]

---

[23] Defendant's response to this statement fails to state either "disputed" or "undisputed" and instead argues around Plaintiff's allegation.

[24] Defendant argues that Plaintiff had other work injuries during that nine-year period, but Plaintiff's statement of facts (as well as this lawsuit) has to do with his shoulder injury only.

[25] Citing *M.G.H. Family Health Center*, 230 F. Supp. 3d at 812, Plaintiff argues Defendant is estopped from even asserting that he was not otherwise qualified, because Defendant took an adverse employment action against him before completing an "individualized inquiry" to see whether he could continue to perform the essential functions of his position. In *M.G.H.*, the court

<u>D. Essential Job Functions and/or Undue Hardship</u>

Finally, Defendant argues that, even if Plaintiff can demonstrate a *prima facie* case of ADA disability determination, he cannot show that Defendant's decision to place him on approved leave was pretextual. (Doc. No. 39 at 17-19). This argument is not relevant to the direct-evidence analysis applicable here.

Instead, as noted above, if a plaintiff sufficiently establishes the elements of a *prima facie,* direct-evidence case, then the employer must show that a challenged job criterion is essential or that a proposed accommodation will impose an undue hardship on the employer. *Ferrari*, 826 F.3d at 256.

---

held that in a direct-evidence case advancing a "regarded as" claim, *when there is no genuine issue of material fact that an employer failed to complete an individualized inquiry*, the employer is statutorily estopped from arguing that the employee is not otherwise qualified for the position. *Id.* In *M.G.H.*, the plaintiff was hired and had worked fourteen days when she was fired because a third-party medical evaluator recommended that she be put on "medical hold" until she had a functional capacity evaluation. *Id.* at 799-800. The third-party evaluator was concerned with only the plaintiff's medical history and medications. *Id.* at 802. The plaintiff never had work restrictions or requested an accommodation. *Id.* at 804. The defendant fired the plaintiff even though the third-party evaluator never concluded she was unable to perform the essential functions of her job. *Id.* at 809.

Defendant claims that it *did* conduct such an interactive process or individualized inquiry. Here, as in *M.G.H.*, Defendant hired a third-party evaluator to evaluate both Plaintiff's current position and a position to which he wished to be transferred. (Doc. No. 48 at ¶ 8). That third-party evaluator considered each position vis-à-vis the recommended work restrictions for Plaintiff and opined that each position required outstretched use of the arms in excess of what Plaintiff's physician recommended. (*Id.* at ¶¶ 8-9). Upon further review, the evaluator determined that no other production positions were available within Plaintiff's recommended restrictions. (*Id.* at 10; *see also* Doc. No. 38-2). Although Plaintiff disagrees with the evaluation and also with the idea that the recommended restrictions precluded him from performing the essential functions of his job, Defendant has presented sufficient evidence that it completed an individualized inquiry through Progressive Health and, therefore, Defendant is not estopped from otherwise asserting that Plaintiff was not otherwise qualified for his job. *See* Doc. No. 38-2 (Work Related Permanent Restrictions Accommodation Report by Progressive Health).

The parties clearly disagree as to whether anything within the doctor's work restrictions limits an essential function of Plaintiff's job. As noted above, this dispute centers around whether Plaintiff is required to make frequent outstretched use of his arms. (Doc. No. 48 at ¶ 9). Defendant claims that the work restrictions *do* limit an essential job function, the outstretched use of Plaintiff's arm. But, as set forth above, Plaintiff claims that nothing in the work restrictions limits an essential job function, citing to his long experience working the same job with the restrictions and his firm belief that nothing about his job requires frequent outstretched reaching. (Doc. No. 48 at ¶¶ 4-5). He has cited evidence in support of that belief. (Id.) That creates a question of fact precluding summary judgment against Plaintiff on the basis that job criterion challenged by Plaintiff is essential..

Finally, because Plaintiff argues that he can perform the essential functions of his job *without* accommodation, there is no proposed accommodation, let alone a proposed accommodation that could impose upon Defendant an undue hardship. This is simply not a "proposed accommodation" case, and Defendant cannot prevail on the basis that a proposed accommodation would impose an undue hardship.

In summary, for the foregoing reasons, each party's motion for summary judgment as to Plaintiff's ADA discrimination claim (Count Three) will be denied.

## WORKER'S COMPENSATION RETALIATION

Count Four of Plaintiff's Complaint alleges that Defendant retaliated against him, in violation of Tennessee law, for filing a worker's compensation claim concerning his shoulder injury in 2007. Plaintiff argues that Defendant constructively discharged him because of his worker's compensation claim and resultant work restrictions. (Doc. No. 32 at 21). Defendant asserts that Plaintiff has not been discharged and cannot establish any causal link between his 2007

worker's compensation claim and any adverse employment action, particularly since Defendant continued to employ him for nearly ten years after the filing of the 2007 claim. (Doc. No. 30 at 19).

To establish a *prima facie* case of worker's compensation retaliatory discharge under Tennessee law, Plaintiff must show: (1) he was an employee of Defendant at the time of his injury; (2) he made a claim against Defendant for worker's compensation benefits; (3) Defendant terminated his employment; and (4) the claim for worker's compensation benefits was a substantial factor in Defendant's motivation to terminate his employment. *Poe v. Brunswick Corp.,* No. 1:17-CV-202, 2019 WL 2753985, at * 12 (E.D. Tenn. July 1, 2019) (citing *Yardley v. Hosp. Housekeeping Sys., LLC*, 470 S.W.3d 800, 805 (Tenn. 2015)). If Plaintiff makes his *prima facie* case, the burden shifts to Defendant to prove a legitimate, non-pretextual, non-retaliatory reason for the termination. *Id.*

The first two elements here are not disputed. As to the third element, Defendant argues that Plaintiff was not terminated but rather was merely placed on approved leave. The Court has found that there are genuine issues of material fact precluding summary judgment on whether Plaintiff was actually discharged.

Defendant also contends that, even if Plaintiff was terminated, he cannot show that his worker's compensation claim was a substantial factor in its motivation to terminate his employment. To show that a worker's compensation claim was a substantial factor in a decision to terminate a plaintiff's employment, the plaintiff may rely upon either direct or circumstantial evidence. *Amofa v. Yates Servs., LLC*, No. 3:18-0105, 2019 WL 3294805, at * 9 (M.D. Tenn. May 31, 2019). Direct evidence here would include evidence that Defendant admitted the reason for Plaintiff's termination was his worker's compensation claim, *id.,* and there is no such evidence in

this case. Circumstantial evidence must be "compelling" and may include negativity by the employer towards the employee's injury, the employer's departure from its own policies, and the employer's differential treatment of similarly situated employees. *Alexander v. Kellogg USA, Inc.*, 674 F. App'x 496, 501 (6th Cir. 2017).

Plaintiff's worker's compensation claim was filed in 2007. Defendant continued to employ Plaintiff for ten years after that claim. This ten-year gap strongly suggests that the claim for worker's compensation benefits was not a substantial factor in Defendant's motivation to terminate his employment, and Plaintiff therefore assumes the burden of showing otherwise. Plaintiff has presented evidence that he was not allowed to return to work in 2017 because of his *work restrictions*, but he has not presented facts to show he was constructively discharged because he filed a *worker's compensation claim* in 2007. The only connection the Court sees between the worker's compensation claim and his alleged constructive discharge is that both relate to his shoulder injury sustained in 2007. Plaintiff has not carried his burden to show a genuine issue of material fact as to this required element of his worker's compensation claim, and thus Defendant is entitled to summary judgment thereon.

## CONCLUSION

For all these reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 38) will be denied, Defendant's Motion for Summary Judgment (Doc. No. 30) will be granted in part and denied in part. In particular, Plaintiff's claims for failure to accommodate (Count One), for failure to engage in the investigative process (Count Two), and for worker's compensation retaliation (Count Four) will be dismissed.

Remaining for trial is Plaintiff's claim for ADA discrimination resulting in Defendant prohibiting him from returning to work (Count Three). Plaintiff will be granted summary judgment

as to the affirmative defenses that: (a) Plaintiff is time-barred, or barred for failure to exhaust administrative remedies, from pursuing the ADA discrimination claim on a "regarded as" theory; and (b) Plaintiff is time-barred from pursuing the ADA discreimination claim based on Defendant's refusal to allow him to return to work due to his work restrictions.

An appropriate Order will be entered.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE